

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

RPAL@SIDLEY.COM
+1 202 736 8329

January 5, 2024

**FILED ELECTRONICALLY**

The Honorable Mario Toscano
Clerk of the Court
U.S. Court of International Trade
1 Federal Plaza
New York, NY 10278-0001

    Re:    <u>*Hindalco Industries Limited v. United States*</u>, Court No. 23-00260

Dear Mr. Toscano:

    Enclosed for filing in the above-captioned proceeding are the following documents for Hindalco Industries Limited:

- Complaint
- Order for Statutory Injunction Upon Consent (Form 24)

    On January 4, 2024, Plaintiff's counsel contacted Kyle S. Beckrich, counsel for Defendant, the United States, regarding consent on the Form 24.  Mr. Beckrich consented to the Form 24 by e-mail on January 5, 2024.

    Copies of these documents are being served today on the parties listed in the attached certificate of service.

# SIDLEY

The Honorable Mario Toscano
January 5, 2024
Page 2

      Please do not hesitate to contact the undersigned if you have any questions regarding this matter.

                                               Respectfully submitted,

                                               */s/ Rajib Pal*

                                               Rajib Pal
                                               Shawn M. Higgins
                                               Justin R. Becker
                                               Lindsey A. Ricchi
                                               Kayla M. Scott

                                               Counsel to Hindalco Industries Limited

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HINDALCO INDUSTRIES LIMITED, | ) <br> ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Court No. 23-00260 <br> ) |
| THE UNITED STATES | ) <br> ) |
| Defendant. | ) <br> ) |

## COMPLAINT

Hindalco Industries Limited ("Hindalco" or "Plaintiff"), by its counsel, states the following claims against the Defendant, the United States.

**I.      JURISDICTIONAL STATEMENT**

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because the action is commenced under Section 516A of the Tariff Act of 1930, as amended (the "Act") (19 U.S.C. § 1516a).

2. This action contests the *Final Results* issued by the U.S. Department of Commerce ("Department" or "Commerce") in the first administrative review ("AR1") of the countervailing duty ("CVD") order on Common Alloy Aluminum Sheet ("CAAS") from India (Case No. C-533-896) for the period August 14, 2020, through December 31, 2021 (the "period of review" or "POR"). *See Common Alloy Aluminum Sheet From India: Final Results of Countervailing Duty Administrative Review; 2020–2021*, 88 Fed. Reg. 76168 (Dep't of Commerce November 6, 2023) ("*Final Results*"). The Department's analysis of issues raised in the *Final Results* is contained in, *inter alia*, the memoranda entitled: "Common Alloy Aluminum

Sheet from India: Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review; 2020-2021," issued on October 31, 2023 ("Final Decision Memo"); "Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review of Common Alloy Aluminum Sheet from India; 2020-2021," issued on April 27, 2023 ("Prelim Decision Memo"); and "Countervailing Duty Administrative Review of Common Alloy Aluminum Sheet from India: Preliminary Results Calculation for Hindalco Industries Limited," issued on April 27, 2023 ("Prelim Hindalco Calc Memo").[1]

## II.   STANDING OF PLAINTIFF

3.   Plaintiff is an Indian producer and exporter of the subject merchandise. Therefore, Plaintiff is an interested party as defined in 19 U.S.C. § 1677(9)(A).

4.   Plaintiff participated in the administrative review that is the subject of this action as a mandatory respondent, and, accordingly, has standing under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d) to bring this action.

## III.   TIMELINESS OF THIS ACTION

5.   Plaintiff commenced this action by filing a summons on December 6, 2023, which was within 30 days after the date of publication of the *Final Results*.

6.   Plaintiff is filing this Complaint on January 5, 2024, which is within 30 days after the date of the filing of the summons. Accordingly, this action is timely filed under 19 U.S.C. § 1516a(a)(2)(A).

---

[1]   In its *Final Results*, the Department made no changes to the methodologies that had been used to calculate subsidy rates in its Prelim Hindalco Calc Memo. Therefore, the Department did not issue an additional calculation memorandum for Hindalco with its *Final Results*.

4

IV. **STATEMENT OF THE FACTS**

7. On June 9, 2022, the Department initiated AR1 of the CVD order on CAAS from India, identifying two Indian producers/exporters of subject merchandise for which timely requests for an administrative review of the applicable CVD order had been submitted. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 35165 (Dep't of Commerce June 9, 2022). Plaintiff was among the two identified Indian producers/exporters of subject merchandise. As noted above, the POR for AR1 was August 14, 2020, through December 31, 2021.

8. On June 24, 2022, the Department issued its initial questionnaire to the Government of India ("GOI") and Plaintiff. From July 2022 through April 2023, the GOI and Plaintiff supplied the Department with information in response to the Department's initial and supplemental questionnaires, as well as other requests and opportunities to submit information.

9. On May 4, 2023, the Department published *Common Alloy Aluminum Sheet From India: Preliminary Results of Countervailing Duty Administrative Review and Partial Recission; 2020-2021*, 88 Fed. Reg 28487 (Dep't of Commerce May 4, 2023) ("*Preliminary Results*"). In its *Preliminary Results*, the Department calculated preliminary countervailable subsidy rates for products produced and/or exported by Hindalco[2] of 37.90 percent for 2020 and 32.43 percent for 2021. *See Preliminary Results*, 88 Fed. Reg. at 28488, and accompanying Prelim Decision Memo and Prelim Hindalco Calc Memo.

10. The Department based these preliminary countervailable subsidy rates for Hindalco in large part on its conclusions regarding the alleged provision of coal for less than

---

[2]   The Department also found Utkal Alumina International Limited ("Utkal") to be cross-owned with Hindalco. *See Preliminary Results*, 88 Fed. Reg. at 28488 n.13. References to Hindalco, therefore, also include Utkal.

adequate remuneration ("LTAR"). The alleged provision of coal for LTAR contributed 33.99 percent to Hindalco's subsidy rate for 2020 and 29.17 percent to Hindalco's subsidy rate for 2021. *See* Prelim Hindalco Calc Memo at Attachment I.

11. In regard to the alleged provision of coal for LTAR, of particular relevance to this Complaint, first, the Department concluded that this alleged program was specific to Hindalco pursuant to Section 771(5A)(D)(iii)(II) of the Act (19 U.S.C. § 1677(5A)(D)(iii)(II)). The Department reached this conclusion on the basis that the "electricity power industry," which the Department considered includes captive power plants ("CPPs") such as those owned and operated by Hindalco, "is a predominant user of the subsidy." *See* Prelim Decision Memo at 24-25 and n.162.

12. Second, the Department calculated the benefit for Hindalco from the alleged provision of coal for LTAR by using a coal price benchmark based exclusively on UN Comtrade coal export price data supplied by Petitioners. *See* Prelim Decision Memo at 12, 25; Prelim Hindalco Calc Memo at 2. The Department disregarded coal price benchmark information from India Coal Market Watch ("ICMW") and McCloskey Thermal Coal Research ("McCloskey") supplied by Hindalco. *See* Prelim Decision Memo at 12.

13. On June 16, 2023, and June 23, 2023, Plaintiff submitted its administrative case brief and rebuttal brief, respectively.[3] Plaintiff argued, *inter alia*, that the Department erred in its *Preliminary Results* in its analysis of the alleged provision of coal for LTAR, including with respect to the Department's specificity and benefit determinations for this alleged program.

---

[3] On July 12, 2023, Plaintiff resubmitted its rebuttal brief under protest pursuant to the Department's determination that the June 23, 2023, rebuttal brief contained untimely new argument.

6

14. On November 6, 2023, the Department published its *Final Results*. As with the *Preliminary Results*, the Department calculated final countervailable subsidy rates for products produced and/or exported by Hindalco[4] of 37.90 percent for 2020 and 32.43 percent for 2021. *See Final Results*, 88 Fed. Reg. at 76169, and accompanying Final Decision Memo. The Department explained it changed its analysis for certain programs, but made no changes to its methodology for calculating Hindalco's subsidy rates relative to its *Preliminary Results*. *See* Final Decision Memo at 1-5. Thus, the alleged provision of coal for LTAR again contributed 33.99 percent to Hindalco's subsidy rate for 2020 and 29.17 percent to Hindalco's subsidy rate for 2021. In the *Final Results*, with respect to the alleged provision of coal for LTAR, the Department continued to, *inter alia*: (i) find this alleged program to be specific to Hindalco pursuant to Section 771(5A)(D)(iii)(II) of the Act (19 U.S.C. § 1677(5A)(D)(iii)(II)), albeit under the modified reasoning that "the power (utility) and the power (captive) industries" "comprise a group of industries that is the predominant user of this subsidy"; and (ii) again reject Hindalco's coal price benchmark data from ICMW and McCloskey in favor of the UN Comtrade data supplied by Petitioners. *See* Final Decision Memo at 21-25, 31-36.

**V.     STATEMENT OF CLAIMS**

    **Count 1:     The Department's Conclusion that the Alleged Provision of Coal for LTAR Is Specific to Hindalco Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law**

15. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 14.

16. Under the statute, for a subsidy program to be countervailable, it must be specific under 19 U.S.C. § 1677(5A). *See* 19 U.S.C. § 1677(5). If the law enacting the subsidy program

---

[4] The Department continued to find Utkal to be cross-owned with Hindalco. *See Final Results*, 88 Fed. Reg. at 76169 n.8.

does not expressly limit the program to an enterprise or industry resulting in *de jure* specificity under 19 U.S.C. § 1677(5A)(D)(i), then the Department will assess whether the subsidy program is *de facto* specific based on the four factors of 19 U.S.C. § 1677(5A)(D)(iii).[5]  Pursuant to 19 C.F.R. § 351.502(a), the Department conducts its *de facto* specificity analysis by considering the four factors of 19 U.S.C. § 1677(5A)(D)(iii) sequentially, and does not undertake further analysis once a single factor warrants a finding of specificity.  Moreover, 19 U.S.C. § 1677(5A)(D) provides that for purpose of 19 U.S.C. § 1677(5A), "any reference to an enterprise or industry … includes a group of such enterprises or industries."  In practice, when the Department finds an alleged subsidy program to be specific based on "predominant use{}" by an industry or group of industries pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(II), it does not find that subsidy program to be specific (and thus countervailable) to *other* industries.

17. In both the *Preliminary Results* and *Final Results*, the Department found that the alleged provision of coal for LTAR by the GOI through Coal India Limited and/or its affiliates and subsidiaries (collectively, "CIL") was *de facto* specific to Hindalco based on the "predominant use{}" factor at 19 U.S.C. § 1677(5A)(D)(iii)(II).  *See* Preliminary Decision Memo at 24-25; Final Decision Memo at 23-25.  The Department, however, modified its reasoning between the *Preliminary Results* and the *Final Results*.

18. In its *Preliminary Results*, the Department reasoned, based on the National Industrial (Activity) Classification ("NIC") published by the GOI's Ministry of Statistics and Program Implementation ("MSPI"), that the "electricity power industry," which the Department

---

[5] These four factors are: (I) The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number; (II) An enterprise or industry is a predominant user of the subsidy; (III) An enterprise or industry receives a disproportionately large amount of the subsidy; and (IV) The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.

considered includes CPPs such as those owned and operated by Hindalco, "is a predominant user of the subsidy." *See* Prelim Decision Memo at 24-25 and n.162.

19. In its *Final Results*, the Department agreed with Hindalco and the GOI that CIL's internal classification system rather than the MSPI's NIC should be relevant for the *de facto* specificity analysis. *See* Final Decision Memo at 21. However, using CIL's internal classification system, the Department reasoned that "the power (utility) and the power (captive) industries" are "electricity generating industries" or "power generating industries," and as such "comprise a group of industries that is the predominant user of this subsidy." *See* Final Decision Memo at 23-25. The Department explained, *inter alia*: "{W}e find the power (utility) and power (captive), i.e., the power generating industries, to be similar in process and output because both industries purchase non-coking coal which is used for power generation. As a result, we find it appropriate to group these industries." Final Decision Memo at 24 (citations omitted).

20. However, the Department erred in its *Final Results* by finding CIL's "power (utility)" and "power (captive)" classifications to be a "group of industries" for purpose of 19 U.S.C. § 1677(5A). Among other things, the Department's view that these two classifications share "similar{ity} in process and output" ignored substantial record evidence indicating that while companies falling within CIL's "power (utility)" classification output electricity, companies falling within CIL's "power (captive)" classification (such as Hindalco) do not output electricity; rather CIL's "power (captive)" classification comprises *numerous different manufacturing industries with various kinds of manufacturing output*, so there is no justification to consider CIL's "power (utility)" and "power (captive)" classifications to be a "group of industries" for purpose of the *de facto* specificity analysis.

21.     Without such grouping, the record indicates CIL's "power (utility)" classification reflects the electricity industry in India that is by far the single predominant user of CIL's coal. As such, because Hindalco falls within CIL's "power (captive)" and "others (non-coking)" classifications, not CIL's "power (utility)" classification, the record provides no basis to conclude that Hindalco was a member of an industry or group of industries that was a predominant user of the alleged provision of coal for LTAR.

22.     Alternatively, even if the Department's reasoning that coal supplied to CIL's "power (utility)" and "power (captive)" classifications should be considered specific (and thus countervailable) pursuant to the "predominant use{}" factor at 19 U.S.C. § 1677(5A)(D)(iii)(II) were correct, the Department erred in concluding that the coal supplied by CIL to Hindalco's facilities that fall under CIL's "others (non-coking)" classification was specific (and thus countervailable).

23.     For these among other reasons, the Department's conclusion in its *Final Results* that the alleged provision of coal for LTAR is specific to Hindalco (and thus countervailable) is not supported by substantial evidence and is not otherwise in accordance with law.

**Count 2:     The Department's Calculation of the Benefit to Hindalco from the Alleged Provision of Coal for LTAR Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law**

24.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 14.

25.     To calculate the benefit from a provision of goods or services for LTAR, the Department utilizes a benchmark pursuant to the three-tier hierarchy established by the Department's regulations at 19 C.F.R. § 351.511(a)(2).  Where a "tier one" benchmark cannot be used (*i.e.*, actual in-country prices), then a "tier two" benchmark will be used based on world market prices.  *See* 19 C.F.R. § 351.511(a)(2)(i)-(ii).  Importantly, the regulations explain that the Department will "consider product similarity … and other factors affecting comparability,"

and "mak{e} due allowance for factors affecting comparability" when selecting the appropriate benchmark for assessing the adequacy of remuneration. 19 C.F.R. § 351.511(a)(2)(i)-(ii). This approach is consistent with the statute requiring the adequacy of remuneration to be determined "in relation to prevailing market conditions," including "quality" and "other conditions of purchase or sale." 19 U.S.C. § 1677(5)(E)(iv). Pursuant to these provisions, the Department's practice is to construct grade-specific benchmarks when grade-specific benchmark data are available and the record shows that the respondent purchases the good at issue on a grade-specific basis.

26. In calculating the benefit to Hindalco from the alleged provision of coal for LTAR in the *Final Results*, for the coal price benchmark, under "tier two" of its hierarchy, the Department relied on the broad-based UN Comtrade coal export price data provided by Petitioners rather than the grade-specific ICMW and McCloskey coal export price data provided by Hindalco. *See* Final Decision Memo at 31-36. The Department had taken the same approach in its *Preliminary Results*. *See* Prelim Decision Memo at 12, 25; Prelim Hindalco Calc Memo at 2.

27. However, the Department erred in its *Final Results* by using Petitioner's UN Comtrade data and rejecting Hindalco's ICMW and McCloskey data for the coal price benchmark. The record shows Hindalco purchases its coal from CIL on a grade-specific basis, and the ICMW and McCloskey coal price data are grade-specific while the UN Comtrade coal price data are not. Therefore, the Department should have used the ICMW and McCloskey data for constructing its coal price benchmark, by extrapolating (from the available ICMW and McCloskey data) benchmark coal prices for the particular grades of coal purchased by Hindalco. By rejecting the grade-specific ICMW and McCloskey data, the Department failed to account for

"product similarity" and "factors affecting comparability," such as "quality" and "other conditions of purchase or sale," as the statute and the Department's regulations require, and as the record allowed. Instead, the Department's use of the broad-based UN Comtrade data resulted in an artificially inflated coal price benchmark relative to the prices of the lower grades of coal actually purchased by Hindalco.

28. The Department offers various reasons for rejecting the ICMW and McCloskey benchmark data (e.g., lack of source and methodology information, limited country coverage, lack of underlying quantity and value data), *see* Final Decision Memo at 31-36, but none are justified or overcome the statutory and regulatory preference for a comparable benchmark. Rejection of benchmark data is appropriate only where there is a complete absence of methodological information, or where a source omits basic descriptive information that makes the data impossible to understand. The ICMW and McCloskey benchmark data offered by Hindalco contain sufficient information on source and methodology so as to be reliable. The Department routinely uses similar benchmark data in similar circumstances, and will extrapolate from such data to create benchmarks as Hindalco proposed in the underlying review. The Department, therefore, had no basis to reject the ICMW and McCloskey benchmark data.

29. For these among other reasons, the Department's calculation of the benefit to Hindalco from the alleged provision of coal for LTAR in its *Final Results* is not supported by substantial evidence and is not otherwise in accordance with law.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Court enter judgment as follows:

(1) Sustaining its complaint herein;

(2) Holding that the Department's determination is not supported by substantial evidence on the record and is otherwise not in accordance with law;

(3) Remanding this administrative review to the Department with instructions to:

    (A) determine that the alleged provision of coal for LTAR is not specific to Hindalco (or alternatively, not specific to Hindalco's facilities under CIL's "others (non-coking)" classification), and therefore not countervailable; and

    (B) if the Department continues to find the alleged provision of coal for LTAR to be specific, then re-calculate the benefit from this alleged program by utilizing the coal price benchmark data from ICMW and McCloskey provided by Hindalco; and

(4)     Awarding such other and further relief as this Court may deem appropriate.

    Respectfully submitted,

    */s/ Rajib Pal*

    Rajib Pal
    Shawn M. Higgins
    Justin R. Becker
    Lindsey A. Ricchi
    Kayla M. Scott

    Sidley Austin LLP
    1501 K Street N.W.
    Washington, D.C. 20005
    (202) 736-8000

    Counsel to Hindalco Industries Limited

    January 5, 2024